# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued September 21, 2018        Decided June 7, 2019

No. 17-5259

RHEA LANA, INC. AND RHEA LANA'S FRANCHISE SYSTEMS, INC.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF LABOR,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00017)

---

*Julie A. Smith* argued the cause for appellants. With her on the briefs were *Joshua N. Schopf* and *John E. McGlothlin*.

*Sydney Foster*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Jessie K. Liu*, U.S. Attorney, *Mark B. Stern*, Attorney, and *Dean A. Romhilt*, Senior Attorney, U.S. Department of Labor.

Before: SRINIVASAN and KATSAS, *Circuit Judges*, and GINSBURG,[*] *Senior Circuit Judge*.

---

[*] Senior Circuit Judge Ginsburg was a member of the panel at the time the case was submitted but did not participate in this opinion.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

Concurring opinion filed by *Circuit Judge* KATSAS.

SRINIVASAN, *Circuit Judge*:    Rhea Lana is a for-profit business that organizes consignment sales of children's merchandise.  The consignors who supply the merchandise for sale can also work at the sales.  They are not paid for that work but instead are given the opportunity to shop at the sales earlier than the general public.

The Department of Labor determined that Rhea Lana's workers qualified as "employees" under the Fair Labor Standards Act.  The company brought a challenge to that decision, contending that the workers should be considered volunteers rather than employees.  The district court rejected the challenge and sustained the Department's determination. Rhea Lana now appeals, and we affirm the district court.

I.

The Fair Labor Standards Act guarantees all "employees" a federal minimum wage.   29 U.S.C. § 206(a); *see id.* § 203(e)(1).  The Act does not extend its protections to workers who are volunteers rather than employees. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 299–303 (1985).   Nor does it protect independent contractors.  *See Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10–11 (D.C. Cir. 2001).

Plaintiffs Rhea Lana, Inc. and Rhea Lana's Franchise Systems, Inc. (collectively, Rhea Lana) run semiannual consignment sales for children's clothing, toys, and other merchandise.  A consignment sale is an arrangement whereby a seller (or consignor) entrusts goods to a reseller (or

consignee) for resale. A consignor receives compensation for the goods only if the consignee successfully resells them. Otherwise, the goods go back to the consignor.

Rhea Lana's events are staffed by the company's managers, who work for compensation. But Rhea Lana's sales also require additional workers to perform everyday tasks like organizing merchandise, removing tags from clothing, and processing customers' purchases at the point of sale. For those tasks, Rhea Lana solicits consignors to work five-hour shifts.

As an incentive to work at the sales, Rhea Lana offers consignors the opportunity to shop before the general public. A consignor's priority in the shopping order depends on how many five-hour shifts she works. The consignors fall into four groups—called Primo Moms, Super Moms, Early Workers, and Workers—with the first of those groups working four shifts and getting to shop first, the second group working three shifts and getting to shop second, and so on.

In 2013, the Department of Labor's Wage and Hour Division began investigating Rhea Lana's labor practices. In August 2013, Robert A. Darling, a District Director in the Division, sent a letter to Rhea Lana stating that "[the Department's] investigation [has] disclosed that your employees are subject to the requirements of the FLSA." Letter from Robert A. Darling to Rhea Lana Rhiner, J.A. 311. That determination included the "group known as consignors/volunteers." *Id.*

Rhea Lana challenged the Department's determination as arbitrary and capricious. The district court initially dismissed the company's challenge on the ground that the Department's determination was not final agency action. *See Rhea Lana, Inc. v. U.S. Dep't of Labor*, 74 F. Supp. 3d 240, 244–46 (D.D.C.

4

2014). We reversed, concluding that the determination was final because it had "legal consequences." *Rhea Lana, Inc. v. U.S. Dep't of Labor*, 824 F.3d 1023, 1031–32 (D.C. Cir. 2016).

On remand, the Department filed an administrative record with the district court containing all contemporaneous agency material supporting its determination. In addition, the aforementioned Robert Darling prepared a declaration that "summarize[d] the contents of the administrative record and further describe[d] how the record contemporaneously supported the challenged agency determination." Darling Decl. 1, J.A. 99. The Department submitted the Darling Declaration as part of the record, and Rhea Lana moved to strike the declaration on the ground that it was an after-the-fact document.

The district court denied the motion to strike the Darling Declaration and then granted summary judgment in favor of the Department. In sustaining the Department's determination that the consignors qualified as employees for purposes of the Fair Labor Standards Act, the court relied on the Department's rationale as set out in the Darling Declaration. Rhea Lana now appeals.

II.

Rhea Lana challenges the Department's determination that the consignors are employees rather than volunteers as arbitrary and capricious. We review the agency's decision directly, "according no particular deference to the judgment of the District Court." *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 814 (D.C. Cir. 2002).

5

A.

Before taking up the merits of Rhea Lana's challenge, we first determine the scope of the administrative record—and, in particular, whether the Darling Declaration can be considered as part of the record explaining the basis for the Department's decision. Ordinarily, we review an agency action based solely on the record compiled by the agency when issuing its decision, not on "some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). That rule generally prohibits "*ex post* supplementation of the record by either side." *Walter O. Boswell Mem'l Hospital v. Heckler*, 749 F.2d 788, 793 (D.C. Cir. 1984).

The Darling Declaration was not part of the record before the Department when it determined that the consignors who work at Rhea Lana's consignment sales qualify as statutory employees rather than volunteers. And a post hoc account like the Darling Declaration would normally be excluded from our review. But the particular circumstances of this case provide adequate assurances that the Declaration accurately reflects the contemporaneous reasoning of the Department. We conclude that the Declaration may be considered in the specific context of this case even though it is a post hoc submission.

First, the Declaration comes from the same official who issued the Department's final determination about the employment status of Rhea Lana's workers. "When final decisionmaking authority is vested in an [agency], the determinations of that body, and not the mere recommendations of [others], are the principal concern of a reviewing court." *Williams v. Bell*, 587 F.2d 1240, 1246 (D.C. Cir. 1978). We thus have allowed reviewing courts to rely on post hoc declarations in certain situations when the declarations

have come from the relevant agency decisionmaker. *See, e.g.*, *Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir. 2016); *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 7 (D.C. Cir. 2006). Darling was the agency decisionmaker, and his reasoning is the proper subject of our review.

Additionally, the Declaration largely echoes the rationale contained in the contemporaneous record. We have barred consideration of post hoc materials when they present an "entirely new theory," *Consumer Fed'n of Am.v. U.S. Dep't of Health & Human Servs.*, 83 F.3d 1497, 1507 (D.C. Cir. 1996), or when the contemporaneous record discloses "[n]o basis for [the agency] determination" whatsoever, *AT&T Info. Sys., Inc. v. GSA*, 810 F.2d 1233, 1235 (D.C. Cir. 1987) (per curiam). But we can permit consideration of post hoc materials when they "illuminate[] the reasons that are [already] implicit in the internal materials." *Olivares*, 819 F.3d at 464 (internal quotation marks omitted).

That is the case here. Although the contemporaneous record contains no materials from Darling himself, it does contain documents from Tamara Haynes, the Department's investigator in this case. The Haynes documents, like the Declaration, conclude that "[t]he class of worker known as consignors/volunteers . . . [a]re employees." Tamara Haynes, FLSA Narrative at 8, J.A. 306. Haynes supports that conclusion with analysis under many of the same factors contained in the Darling Declaration, including the incentive to work (i.e., the expectation of in-kind benefits) and the scope of duties assigned to the workers (i.e., the degree of control exercised by the employer and the benefit that accrued to the employer).

Rhea Lana observes that much of the analysis in the Haynes documents focuses on whether Rhea Lana's workers

are independent contractors rather than whether they are volunteers. But for our purposes, the question is whether the Darling Declaration is "*consistent* with the administrative record." *Olivares*, 819 F.3d at 464 (emphasis added) (quoting *Manhattan Tankers, Inc. v. Dole*, 787 F.2d 667, 673 n.6 (D.C. Cir. 1986)). And nothing in the Haynes documents that addresses the independent-contractor question is at odds with the reasoning of the Darling Declaration.

First, the factors that govern the independent-contractor question share substantial overlap with the factors that govern the volunteer question. *Cf. Morrison*, 253 F.3d at 11 (recognizing the applicability of either of two "different, although similar, set[s] of factors" to determine employee status, so long as either test permits the agency to "look at the totality of the circumstances and consider any relevant evidence"). Second, it is not especially significant that Haynes *also* analyzed whether the workers qualify as independent contractors in addition to assessing whether they are volunteers. After all, to conclude that Rhea Lana's workers were employees, the Department would need to determine that the workers were neither volunteers nor independent contractors. The Darling Declaration, in sum, captures much of the same rationale contained in the pre-decision materials, providing further assurances that the Declaration captures the actual reasons for the Department's determination.

We note, finally, that the specific posture of the case supports the permissibility of relying on Darling's post hoc recapitulation. When the Department made its determination, it was unaware that the decision would be deemed final agency action subject to judicial review. In fact, it appears to have assumed that the determination was not final agency action. *See Rhea Lana*, 824 F.3d at 1031. And when an agency believes it "had no obligation to explain its actions

8

contemporaneously," it is common for "the entire record, or a good part of it, [to be] actually created for the sole purpose of judicial review." *Women Involved in Farm Econ. v. U.S. Dep't of Agric.*, 876 F.2d 994, 999 (D.C. Cir. 1989). Any resulting explanation will be "by definition . . . *post-hoc*." *Id.* In that situation, there is more reason to permit a post hoc account, especially one from the agency's decisionmaker himself.

In short, the particular circumstances of this case lead us to conclude that the Darling Declaration is admissible for our consideration. And because we conclude that the Darling Declaration is admissible, we affirm the district court's denial of Rhea Lana's motion to strike the Declaration. *See* Fed. R. Civ. P. 56(c)(4) (allowing for striking of declaration if it "set[s] out facts that would [not] be admissible in evidence").

B.

We now turn to the merits of Rhea Lana's challenge to the Department's determination. In assessing whether the agency's decision was arbitrary and capricious, we ask "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

The Fair Labor Standards Act protects "employees," a term that excludes both volunteers and independent contractors. *See Alamo*, 471 U.S. at 299–303; *Morrison*, 253 F.3d at 10–12. Rhea Lana has not argued that the consignors who work at its sales are independent contractors rather than employees. Instead, the company has argued only that its workers are volunteers rather than employees. *See* Rhea Lana Br. 20–21. We thus limit our consideration to whether the consignors are volunteers or employees, and we have no

occasion to consider whether they may qualify as independent contractors.

The first question is whether the Department applied the correct legal test to determine whether Rhea Lana's workers are volunteers or employees under the Act. The governing precedent is *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985). *Alamo* establishes that "[t]he test of employment under the Act is one of economic reality." *Id.* at 301 (internal quotation marks omitted). In the volunteer-versus-employee context, the Supreme Court has placed particular emphasis on one consideration: the expectation of in-kind compensation. *See id.* Still, "no one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence." *Morrison*, 253 F.3d at 11.

Here, the Department correctly employed a totality-of-the-circumstances approach. Most importantly, the Department carefully considered whether the workers had an expectation of compensation in exchange for their services. *See* Darling Decl. ¶¶ 5–8, 10. The Department also examined the degree of control exercised by the employer and the extent to which the workers' services were integral to Rhea Lana's business. *See id.* The Department thus looked to appropriate factors under *Alamo*.

Rhea Lana does not meaningfully dispute that the Department's decision, as recounted in the Darling Declaration, turned on the correct factors under *Alamo*. Instead, Rhea Lana contends that the Department improperly started from a "conclusory premise that individuals cannot volunteer with for-profit companies." Rhea Lana Br. 20. That contention is belied by the explanation in the Darling Declaration.

The Declaration, after eight paragraphs of analysis addressing whether Rhea Lana's consignors are properly considered employees rather than volunteers, says only the following about a company's for-profit status: "In addition, Rhea Lana was a for-profit company. [The Department's] longstanding position is that, with very limited exceptions, for-profit companies cannot treat workers as volunteers instead of employees under the FLSA. That position was further support for our conclusion that the workers at issue were employees." Darling Decl. ¶ 9. That statement by its own terms only sets out "further support" for a conclusion already reached by the agency, not an antecedent "premise" of that conclusion. We thus reject Rhea Lana's contention that the Department improperly rested its determination on a "conclusory premise" about the salience of the company's for-profit status.

The second question is whether the Department made a clear error of judgment in applying the *Alamo* test to the facts and concluding that the workers are employees rather than volunteers. The scope of our review in that regard is circumscribed, and we are not to "substitute [our] judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Department's findings on each of the relevant factors finds adequate support in the record. For evidence of the workers' expectation of in-kind compensation, the Department cites Rhea Lana's "solicitations to the workers to sign up for shifts in exchange for the opportunity to shop early" and Rhea Lana's "offer to pay people $8 per hour to work shifts at the sales when it could not induce enough individuals to work in exchange for the opportunity to shop early." Darling Decl. ¶ 6. The Department also points to statements from the workers

themselves indicating "that they were motivated to work at the sales by the opportunity to shop early." *Id.* ¶ 8.

For evidence of the control exerted by Rhea Lana over its workers, the Department references statements from workers indicating that they "were supervised by Rhea Lana's employees." *Id.* And for evidence that the work was integral to Rhea Lana's business, the Department cites Rhea Lana's admission that the workers "were the lifeblood of their sales events." *Id.* ¶ 6. The Department also notes statements from workers indicating that their labor was "for the benefit of Rhea Lana's general sales operations." *Id.* ¶ 8.

In sum, the Department considered the relevant factors and did not commit a clear error in judgment when applying those factors to the facts. The Department's determination that Rhea Lana's workers are employees rather than volunteers therefore was not arbitrary or capricious.

\* \* \* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*

KATSAS, *Circuit Judge*, concurring: Rhea Lana argues that its workers are volunteers—and therefore not employees—under the Fair Labor Standards Act. On the facts of this case, it was not arbitrary for the Department of Labor to find that the workers, who expected to and did receive in-kind compensation, are not volunteers.

In an appropriate case, I would be open to the argument that workers like Rhea Lana's are not employees for a different reason: because they are independent contractors. The lack of "permanence or duration of the working relationship" weighs in favor of independent-contractor status. *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001). Here, that consideration seems to favor Rhea Lana strongly. As the Department's own investigator found, "[t]he persons in question work for relatively short periods of time at irregular intervals in between personal activities" and "work 2 times per year at the most." J.A. 303. It also appears that Rhea Lana has only limited control over "work schedules or conditions of employment"—another consideration favoring independent-contractor status. *Morrison*, 253 F.3d at 11; *see* J.A. 304–05 (finding that workers choose whether to work at individual sales and "feel free to bring helpers with them"). Nevertheless, Rhea Lana failed to argue that their workers are independent contractors, so I agree that we must affirm.